IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| IN RE: | CASE NO. 14-02965 (MCF) |
|---|---|
| **CARMEN MILAGROS LUGO RUIZ** | CHAPTER 13 |
| Debtor | |
| **CARMEN MILAGROS LUGO RUIZ** | ADVERSARYCASENO.15-00273MCF |
| Plaintiff | |
| V. | |
| **FIRST BANK OF PUERTO RICO; ABC INSURANCE COMPANY; JOHN DOE AND JANE DOE** | |
| Defendants | |

## OPINION AND ORDER

Before the court is Plaintiff, Carmen Milagros Lugo Ruiz's (hereinafter "Debtor") motion for partial summary judgment and opposition thereto by Defendant, First Bank of Puerto Rico, (hereinafter "First Bank"), for an alleged violation of the automatic stay under 11 U.S.C. § 362.[1] In its opposition, First Bank seeks the dismissal of the adversary case. For the reasons stated herein, the court partially grants Debtor's motion for partial summary judgment and denies First Bank's request to dismiss the complaint.

---

[1] Docket Nos. 29 and 36, respectively.

-1-

## I – JURISDICTION

The court has jurisdiction to hear this case pursuant to 28 U.S.C. § 1334 and the general order of the United States District Court for the District of Puerto Rico dated July 19, 1984, which refers title 11 proceedings to the Bankruptcy Court. This is a core proceeding, pursuant to 28 U.S.C. § 157(b).[2]

## II – MOTION FOR SUMMARY JUDGMENT

Summary judgment is proper only where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056. This matter is appropriate for summary judgment disposition as there are no material facts in dispute and one of the parties is entitled to judgment as a matter of law, pursuant to Fed. R. Civ. P. 56(c), as made applicable to these proceedings by virtue of Fed. R. Bankr. P. 7056. Celotex v. Catrett, 477 U.S. 317 (1986) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)); Vega-Rodriguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).

## III – UNDISPUTED MATERIAL FACTS AND PROCEDURAL HISTORY

On April 11, 2014, Debtor filed a Chapter 13 bankruptcy petition (Case No. 14-02965). First Bank was included in both the master address list and Schedule D of the Schedules with regards to Debtor's pre-petition mortgage loan in the amount of $93,338, that is secured over Debtor's property located at Urb. Villa Verde 3 Street G-42, Bayamón, Puerto Rico. [3]

On or about April 16, 2014, the Clerk of the court gave notice through the CM/ECF System to First Bank, who was informed that all actions or proceedings to enforce any claims or

---

[2] Unless otherwise indicated, all statutory references are to title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8 (the "Bankruptcy Code").

[3] Bankruptcy case's original Docket No. 1.

to levy on Debtor's property subsequent to the filing of her petition were stayed.[4] Subsequently, First Bank filed a proof of claim on May 15, 2014, for the amount of $94,387.67.[5]

After the filing of the bankruptcy case, First Bank sent letters to Debtor from June to December 2015. The letters contained the following information: the total due, next payment date, and information regarding the Servicemembers Civil Relief Act under 50 USC App. §§501-597 ("SCRA"). [6]

Debtor filed the adversary complaint requesting relief so that the court would essentially: (1) find that First Bank willfully violated the automatic stay; and (2) impose liability, sanctions and/or attorney's fees for the willful violation of the automatic stay.[7]

### IV – LEGAL ANALYSIS

The alleged violations of the automatic stay by First Bank mainly stem from the monthly letters sent to Debtor for several months, which included the total due and next payment date. We begin our analysis by examining the threshold issue of whether the monthly statements sent to Debtor represent collection letters in violation of the automatic stay. Upon the filing of a bankruptcy petition, a bankruptcy estate is created which consists of all of the property that will be subject to the jurisdiction of the bankruptcy court. 11 U.S.C. § 541. Property belonging to the estate is protected from piecemeal dismantling by creditors by the automatic stay provisions of § 362. It is this central aggregation of property that promotes the fundamental purposes of the Bankruptcy Code: the breathing room given to a debtor that attempts to make a fresh start, and the equality of distribution of assets among similarly situated creditors, according to the priorities set forth within the Code. It is from estate property that the debtor's creditors will be paid. 5-541 Collier on Bankruptcy ¶ 541.01 (Alan N. Resnick & Henry J. Sommer eds. 16th ed. 2015).

The automatic stay protects property of the bankruptcy estate and provides for a broad stay of litigation, lien enforcement and other actions, judicial or otherwise, that are attempts to enforce or collect prepetition claims. It also stays a wide range of actions that would affect or

---

[4] Bankruptcy case's Dockets No. 4 and No. 11.
[5] Bankruptcy case's Proof of Claim #5.
[6] Docket No. 42, Exhibits I, II, III, IV, V, and VI.
[7] Docket Nos. 29 and 42.

interfere with property of the estate, property of the debtor or property in the custody of the estate.[8] The automatic stay prevents creditors from attempting in any way to collect a prepetition debt and is applicable to all entities, to prevent any act to collect, assess, or recover a claim against a debtor that arose before the commencement of the case. Section 362 is intended to prevent creditor's harassment of a debtor by collecting prepetition debts.[9]

Debtor alleges in essence that First Bank violated the automatic stay by sending monthly letters, which she understands were collection letters of prepetition debts. First Bank, on the other hand, alleges that the letters sent to her were not collection letters but informative letters regarding the Debtor's rights under SCRA. First Bank argues that if the court finds that the SCRA letters constitute a violation of the automatic stay then it would be a technical violation and not a willful violation of the automatic stay as it was acting under the good faith belief that it was required to send the SCRA notice to its borrowers.

It is undisputed that First Bank sent letters to Debtor for six months following the filing of the bankruptcy petition: June, August, September, October, November, and December of 2015.[10] First Bank initially objected to these documents by stating that the allegation did not make reference to a document that supports the allegation, as Debtor had not submitted the unsworn statement required by 28 U.S.C. § 1746. Also, First Bank specified that the documents could not be admitted into evidence since they were in the Spanish language in contravention to Local Bankruptcy Rule 9070-1(c). Debtor subsequently translated the letters into the English language and submitted the Unsworn Statement, making these allegations moot.[11]

First Bank denied that the letters were an attempt to collect on a debt, but admitted that the letters were sent to inform Debtor of her rights under SCRA.[12] First Bank argues that the

---

[8] 11 U.S.C. § 362(a); 3 Collier on Bankruptcy ¶ 362.03, (Alan N. Resnick & Henry J. Sommer eds. 16th ed. 2015).

[9] 11 U.S.C. § 362(a)(6); 3 Collier on Bankruptcy ¶ 362.03, (Alan N. Resnick & Henry J. Sommer eds. 16th ed. 2015). In re Smith, 185 B.R. 871, 872-73 (Bankr. M.D. Fla. 1994) ("Section 362(a)(1) interacts with sections 362(a)(6) to prevent harassment of the debtor with respect to prepetition claim. 12 Cong. Rec. H11092 (daily ed. Sept. 28, 1978); S17409 (daily ed. Oct. 6 1978) (remarks of Rep. Edwards and Sen. Deconcini). The language of Section 362(a)(6) is 'very broad,' [citation omitted], and is designed to prevent creditor coercion and harassment of the debtor.").

[10] Docket No. 37, at 10c and 11c, ¶2 and ¶3 respectively. First Bank did not deny that it sent the letters in their "Opposition to statement of facts and counter statement of facts."

[11] Docket Nos. 41 and 43.

[12] Docket No. 37, at 10c and 11c, ¶2 and ¶3 respectively.

-4-

letters must be sent to meet its obligations under SCRA,[13] which require First Bank to inform debtors of their rights under this federal statute.[14] Javier Hernandez Scimeca, Certified Public Accountant and Senior Vice-president Mortgage Banking Administration Manager for First Bank Puerto Rico declared in his "Unsworn Declaration under penalty of Perjury" that the SCRA letters are sent in order to comply with the requirements of the Servicemembers Civil Rights Act.[15] According to First Bank, SCRA requires the banks to inform its clients of their rights and protections in the event that they are active members of the armed forces.[16]

This court found no legal argument supporting this argument. First Bank did not support its contentions with specific SCRA sections which supposedly imposed the obligation on First Bank to inform clients of any particular information. This court reviewed the Servicemembers Civil Rights Act and did not find any provision supporting the argument that creditors are required to send monthly letters to their clients regarding the clients' rights under SCRA.

First Bank points out that the letters do not contain language instructing Debtor to make a payment nor do they contain language requesting payment of the debt owed.[17] Courts have held that not all acts intended to motivate a debtor to voluntarily repay a prepetition debt are stayed under § 362(a)(6), such as when the communication is sent to debtor's counsel.[18] For example, in In re Duke,[19] the Seventh Circuit found that a creditor's letter sent to debtor's counsel, and which was copied to debtor advising of the balance of debtor's account, the opportunity to reaffirm, and of continuing credit if debtor reaffirmed the debt, did not violate § 362(a)(6). The court reasoned that, if pushed to its logical extreme, § 362(a)(6) would prohibit all contact between debtors and creditors, creating an unworkable tension between it and the debtor's right to reaffirm. The court expressed that the letter to the debtor's attorney might have been permissible, but there was no apparent reason for the creditor to copy the debtor other than to pressure payment; normally such an action should be found to violate the stay.[20] Nevertheless, the court found that no violation had occurred because the letter that was sent to

---

[13] Docket No. 36 at third paragraph, ¶4.
[14] Docket No. 37 at 9, ¶6.
[15] Docket No. 37 at 7 and 8.
[16] Docket No. 37 at 7, ¶8.
[17] Docket No. 37 at 5 and 6, ¶5.
[18] 3 Collier on Bankruptcy ¶ 362.03[8] (Alan N. Resnick & Henry J. Sommer eds. 16th ed. 2015).
[19] In re Duke, 79 F.3d 43 (7th Cir. 1996).
[20] 3 Collier on Bankruptcy ¶ 362.03[8][b] (Alan N. Resnick & Henry J. Sommer eds. 16th ed. 2015).

the counsel and copied to the Debtor, was not a letter inherently coercive or threatening. In another case, In re Flynn, 143 B.R. 798 (Bankr. D.R.I. 1992), the court found that the credit union violated the stay by communicating directly with debtor in seeking reaffirmation when it knew debtor was represented by counsel.[21]

In our case, First Bank sent the letters directly to Debtor, not her counsel. Therefore, this court concludes that First Bank willfully violated the automatic stay, since First Bank intentionally sent the letters to Debtor. A willful violation does not require a specific intent to violate the automatic stay. The standard for a willful violation of the automatic stay under § 362(k) is met if there is knowledge of the stay and the defendant intended the actions which constituted the violation. In cases where the creditor received actual notice of the automatic stay, courts must presume that the violation was deliberate. Homer Nat'l Bank v. Namie, 96 B.R. 652, 654 (U.S.D.C. W.D.La. 1989). The debtor has the burden of providing the creditor with actual notice. Once the creditor receives actual notice, the burden shifts to the creditor to prevent violations of the automatic stay. Mitchell Const. Co., Inc. v. Smith (In re Smith), 180 B.R. 311, 319 (Bankr. N.D.Ga. 1995). Once the Creditor becomes aware of the filing of the bankruptcy petition and therefore the automatic stay, any intentional act that results in a violation of the stay is "willful", no specific intent to violate the stay or malice is required.[22]

First Bank received notice of the bankruptcy petition and, included the prepetition debt in its proof of claim, thereby acknowledging under oath that it was a pre-petition debt, which clearly falls within the provisions of § 362(a)(6). The letters sent by First Bank to Debtor included the amount of the debt and the due date for payment. These letters were sent to "collect. . .or recover a claim against the debtor that arose before the commencement of the case. . . ." and thus, violated the automatic stay. 11 U.S.C. § 362(a)(6). There is no reason for First Bank to include the amount of the debt and the next due date in six monthly letters other than to pressure payment; such a willful action should be and is hereby found to violate the automatic stay. If First Bank wanted to notify the Debtor of her rights under SCRA, it could

---

[21] Flynn, 143 B.R. 798.

[22] In re Johnson, 501 F.3d 1163, 1172 (10th Cir. 2007). See also Brown v. Chesnut (In re Chesnut), 422 F.3d 298 (5th Cir. 2005) (a willful violation does not require a specific intent to violate the automatic stay); Fleet Mortgage Group, Inc. v. Kaneb, 196 F.3d 265 (1st Cir. 1999) (the standard for a willful violation of the automatic stay is met if there is knowledge of the stay and the defendant intended the actions which constituted the violation); In re Lansdale Family Restaurants, Inc., 977 F.2d 826, 829 (3d Cir. 1992) (act done intentionally with knowledge that bankruptcy petition has been filed is willful violation of stay).

have made clear that the letters were not intended to collect a debt but to inform her legal rights under the law. No such reservation or qualification was indicated in any of the six letters.

Having found that First Bank willfully violated the automatic stay in effect in this case, the court shall consider whether the willful violation warrants the imposition of actual damages, attorney's fees, and/or punitive damages to First Bank in an evidentiary hearing.

## ORDER

WHEREFORE, IT IS ORDERED that the motion for partial summary judgment presented by the Debtor to find First Bank in violation of the automatic stay is hereby GRANTED.

IT IS ALSO ORDERED that Debtor's request for actual damages, including costs and attorney's fees, shall be heard in an evidentiary hearing to be scheduled.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 17th day of March, 2017.

Mildred Cabán

_____
MILDRED CABAN FLORES
United States Bankruptcy Judge

-7-